## In re HEMPSTEAD.

### (Circuit Court, E. D. Pennsylvania. August 15, 1899.)

### No. 48.

CUSTOMS DUTIES—CLASSIFICATION—SILK BANNERS FOR PRESENTATION TO CHURCH.
  Silk banners, embroidered by hand in designs specially prepared by an
  artist, made and imported expressly for presentation to an incorporated
  church society, to be used in connection with its service, and which derive
  their value from their artistic appearance, and not from the fact that they
  are embroidered, are "works of art," entitled to free entry, under paragraph
  686 of the tariff act of 1894, and are not dutiable as silk embroidery,
  under paragraph 301.

Frank P. Prichard, for appellant.

James M. Beck, for the United States.

GRAY, Circuit Judge. This is an appeal by William O. Hempstead, trading as O. G. Hempstead & Son, from the decision of the board of United States general appraisers affirming the action of the collector of the port of Philadelphia in respect to the classification for duty of five church banners. In 1896 the importers brought into New York five highly decorated church banners for presentation to the Trinity Lutheran Church, of Reading, Pa., by the Women's Missionary Society of the same city. The designs embodied in these banners had been specially ordered by the donors, through their president, to be made by a professional artist from Nuremburg. To aid him in this work, and in order that the banners, when completed, should correspond with the architecture of the church, photographic views of the church interior were sent to him. After these designs were completed, they were sent to the sisters of a Lutheran institution at Neu Dettelsau, Germany, who from them made the banners or hangings by the most exquisite and artistic needlework upon silk foundations. After their completion, which in all consumed about one year, the banners were sent to America for presentation to the church, after which they were to be exhibited by it during the hours of public worship. The collector of the port, upon their entry, assessed duty upon the articles at the rate of 50 per centum ad valorem, under paragraph 301 of the act of August 27, 1894, as silk embroidery. The importers filed a protest, claiming that the articles were exempt from duty, under the provision of paragraph 686 of the same act, as "works of art" of the character therein designated. These two paragraphs, which are therefore involved in the determination of the character of these articles, are as follows:

301. Laces and articles made wholly or in part of lace and embroideries, including articles or fabrics embroidered by hand or machinery, handkerchiefs, neck rufflings, and ruchings, nettings and veilings, clothing ready made, and articles of wearing apparel of every description, including knit goods made up or manufactured wholly or in part by the tailor, seamstress or manufacturer, composed of silk, or of which silk is the component material of chief value, and beaded silk goods, not specially provided for in this act, fifty per centum ad valorem.

686. Works of art, the production of American artists residing temporarily abroad, or other works of art, including pictorial paintings on glass, imported

expressly for presentation to a national institute, or to any state or municipal corporation, or incorporated religious society, college or other public institution, including stained or painted window glass or stained or painted glass windows; but such exemption shall be subject to such regulations as the secretary of the treasury may prescribe.

There is but one question upon which the proper classification of the banners in question, therefore, depends. That they were imported expressly for presentation to an incorporated religious society is established by the unimpeached testimony of the only witness who was examined before the general appraiser, to whom, as examiner, the matter was referred. If the banners are "works of art," they admittedly fall within the provisions of section 686. If they cannot be said to be "works of art," although they may fulfill the other provisions of section 686, of course the contention of the importer must fall. No expert evidence was taken before the appraisers. Both they and the collector seemed to have acted upon their inspection of the banners in question. They returned to the circuit court the record and all the evidence, such as it was, before them, together with a certified statement of the facts involved in the case, and their decision thereon. This court has already, in Re Hempstead (No. 31, Oct. Sess. 1896) 95 Fed. 967, decided that "there is nothing in the law governing the action of the board of appraisers which requires that in every case there should be original testimony heard by said appraisers in the case of an appeal taken to them, or that witnesses should be actually called to testify whether, in the opinion of the board, their testimony was necessary or not." Under the provision of section 15 of the act of June 10, 1890, the circuit court referred the case to one of the general appraisers as an officer of the court to take and return to the court such further evidence as might be offered by either party. Under this order the testimony of a single witness produced by the importers was taken, to wit, the testimony of Jacob Fry, professor in the theological seminary at Mt. Airy, and pastor of the congregation to whom the banners imported were to be presented. His testimony is as follows:

"Q. I show you a banner which was entered in the custom house on January 9, 1896. What is your knowledge of that banner? A. I know that it was received. There are five banners that were received as a present by the congregation from the Women's Mission Society, who gave them as a present to the church for the enrichment of our service. Q. Are they banners similar to this? A. The same size, different patterns and different colors. There is a color in white, a color in black, a color in purple, a color in red, and a color in green. Q. Was the church of which you speak an incorporated religious society? A. Yes, sir. Q. Under what law? A. Pennsylvania. Q. You say this was a present to the church? A. Yes, sir. Q. By whom? A. The Women's Mission Society of Reading. Q. What negotiations transpired prior to the donation by the association to the church? A. Mrs. Muhlenburg, who was president of this women's society, was traveling in Europe, and visited the institution at Neu Dettelsau, in Germany, whence the Protestant deaconesses come, and there she saw the work of this order, with which they furnish churches, and by which they maintain the institution for their income. She wrote to the society of which she is president, and asked that she should be allowed to order a set of these cloths for the use of Trinity Lutheran Church, to be made as a present or gift to the congregation; to which they consented. She ordered them. An artist was employed to draw designs,—Dr. Beck of Nuremburg. They sent to me to get photographic views of the church inside, to

make the banners correspond with the architecture of the church. It took about one year to make them, after which they were shipped to the church at Reading. This is one of them. Q. How are those made, do you know? A. That I could not answer. I do not know by what process it is made. Q. You testified they were made from designs? A. Yes, sir; designs drawn specially by the artist for those. Q. Did you state the name of the artist who designed that? A. My recollection of the name is Dr. Beck,—Beck, at least. I do not know what kind of a doctor, whether an artistic doctor or not, but he is an artist in that line. Q. Was he a professional artist? A. A professional artist residing in Nuremburg. Q. What use is made of these banners in the church? A. They are exhibited during the hours of public worship. Q. How exhibited? A. This one you have there is put in front of the altar. There is another one corresponding to it, a smaller design, that is suspended from the pulpit, and there is a third one—there are three of each set—that is suspended at the lecturn or reading desk. Q. Have they any use as an ordinary covering? A. No, sir; they are taken away after the service, and put away, and they have regular coverings to put over these pulpits, etc. These are not coverings. They are exhibited for worship. They are designs. Q. To the church, did these derive their value from their artistic appearance, or from the fact that they are embroidered? A. Their artistic appearance. Anybody could make embroidery, but not anybody can make that kind of work. Q. Their value to the church was entirely from their artistic appearance? A. Certainly."

It seems to the court that the contention of the district attorney that, considering these articles as "works of art," they are nevertheless subject to the well-settled rule that general legislation must give way to special legislation on the same subject, and that general provisions of such a statute must be interpreted so as to embrace only provisions to which the special provisions are not applicable, cannot be sustained. It is the general legislation which lays a duty upon all embroideries. It is the special legislation that exempts from duty, not all works of art, but works of art imported "expressly for presentation to an incorporated religious society"; and a work of art imported for such a purpose, whether it be silk embroidery or dressed stone, is taken out of the purview of the general legislation imposing duties by the particular description of the section granting the exemption. The testimony of the Rev. Mr. Fry, not contradicted by that of any witness produced by the government, is taken by the court as decisive of the question that these importations were works of art within the meaning of the statute, and, as it is not contended that they were not imported for presentation to an incorporated religious society, the question before the court must be determined in favor of the importers, and the decision of the board of appraisers in the premises reversed.